Leroy Spells, Plaintiff Pro Se
133 Oakland Avenue
Somerset, NJ 08873
Cherylspells1@gmail.com
(732) 912-0091 Telephone

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Leroy Spells | Case No.: |
| Plaintiff, | |
| v. | |
| Stern & Eisenberg, P.C. | **PLAINTIFF'S VERIFIED COMPLAINT** |
| Defendant. | **TRIAL BY JURY DEMANDED** |

**COMES NOW** Plaintiff, Leroy Spells, (hereafter referred as "Plaintiff")
allege herein follows:

## JURISDICTION AND VENUE

1. These claims arise under Federal Question Jurisdiction, including but not
   limited to The Fair Debt Collection Practices Act (FDCPA or "Act 2"), both
   acts hereinafter referred to collectively as the "Acts") and the law of this
   State where I live and where defendant(s) does (do) business.

2. This court has both personal and subject matter jurisdiction to hear this case
   pursuant to 28 USC § 1332.

3. The Plaintiff is a resident of New Jersey and the Defendant is authorized to do business in the State of New Jersey.

4. The amount in controversy exceeds $75,000.

5. Venue lies in this District pursuant to 28§ 1391(b). The issue in the present lawsuit lies within the territorial limits of Somerset County, State of New Jersey.

## PARTIES

6. Plaintiff is resident of the County of Somerset, State of New Jersey and resides at commonly known as: 133 Oakland Avenue, Somerset, NJ 08873.

7. Through belief, ("Defendant"), Stern & Eisenberg, P.C. ("Stern & Eisenberg, P.C."), having its principal place of business at 1040 N. Kings Highway, Suite 407 Cherry Hill, NJ 08034, and authorized to do business in the State of New Jersey.

## ALLEGATIONS

8. Defendant is a "debt collectors" as defined by 15 U.S.C. §1692(6). See, "a true copy Defendant's correspondence dated April 1, 2016" attached hereto as exhibit "A".

9. Plaintiffs are "consumer" under the meaning of the FDCA and under the facts alleged.

10. Defendant qualifies as "debt collector" who is attempting to collect a "debt" that arose out of a residential mortgage promissory Note transaction entered into primarily for personal purpose.

11. Plaintiff was subject of collection efforts of Defendant concerning a debt, defined under the meaning and purview of Act 2.

12. Defendant, alone or in concert, joint venture, partnership and/or some other contractual arrangement, violated the Acts as pled herein and as to be discovered, thus causing plaintiff, special, general and punitive.

13. Plaintiff brings claim, against Defendant ("Stern & Eisenberg, P.C.") for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt on behalf of their client Ocwen Loan Servicing, LLC ("Ocwen Loan Servicing, LLC") and U.S. Bank National Association et als. by filing a complaint (the "Underlying Litigation"), against Plaintiff ("Mr. Spells") a mortgage debt ("the Debt") that was allegedly not owed to Ocwen Loan Servicing, LLC at the time Ocwen Loan Servicing, LLC sent Plaintiff the Notice of Intention to Foreclosure dated **January 28, 2016** pursuant to N.J.S.A. 2A:50-56. See, "a true copy of the Notice of Intention to Foreclose dated January 28, 2016" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "B".

14. Plaintiff contends that prior to the filing of the Underlying Litigation by Stern & Associates, P.C., the Debt was held by, **U.S. Bank National Association et als.**, which the mortgage was never assigned to Ocwen Loan Servicing, LCC therefore ("Ocwen Loan Servicing, LLC") is and was not a "residential mortgage lender" or "lender" as define by N.J.S.A. 2A:50-56(c).. Therefore, Plaintiff complains that Defendant's client Ocwen Loan Servicing, LLC' January 28, 2016 notice to Plaintiff violated §1692e(2) and 1692(10) of the FDCPA by making false, deceptive, and/or misleading representation in the January 28, 2016 by sending the notice to Plaintiff when Ocwen Loan Servicing, LCC did not fit within the meaning of a "residential mortgage lender" or "lender" as define by N.J.S.A. 2A:50-56(c) at the time the notice was sent to Plaintiff yet, Mr. Justin M. Strausser, Esq. (090692014) of the office of Stern & Eisenberg, P.C. alleged in paragraph (18) that U.S. Bank National Association was in compliance with the "Fair Foreclosure Act" prior to the filing of the Underlying Litigation. See "a true copy of the complaint "Underlying Litigation by Mr. Justin M. Strausser, Esq." filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "C".

15. Plaintiff brings claim, against Defendant for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt by alleging that U.S. Bank National Association et als. was in compliance with the "Fair Foreclosure Act" in paragraph (18) prior to the filing of the Underlying Litigation sign by Mr. Justin M. Strausser, Esq. (090692014) of the office of Stern & Eisenberg, P.C. Defendant. See "a true copy of the complaint "Underlying Litigation by Mr. Justin M. Strausser, Esq." filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "C".

16. Defendant contends that compliance with this notice provision is, in effect, a condition the lender must satisfy in order to either "accelerate the maturity of any residential mortgage obligation" or "commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage." N.J.S.A. 2A:50-56(a). Compliance with N.J.S.A. 2A:50-56 shall be set forth in the pleading of any legal action" to foreclosure a residential mortgage. N.J.S.A. 2A:50-56(f).

17. Plaintiff brings claim, against Defendant for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., attempting to collect a debt by alleging that U.S. Bank National Association et als. was in compliance with the "Fair Foreclosure Act" prior to the filing of the Underlying Litigation sign by Mr. Justin M. Strausser, Esq. of the office of Stern & Eisenberg, P.C. which alleged U.S. Bank National Association et als. was in compliance of N.J.SA. 2A:50-56. Therefore, Plaintiff complains that Defendants' Underlying Litigation on behalf of their client violated §1692e(2) and 1692(10) of the FDCPA by making false, deceptive, and/or misleading representation that U.S. Bank National Association et als. was in compliance of N.J.S.A. 2A:50-56 prior to its filing. See "a true copy of the complaint "Underlying Litigation by Mr. Justin M. Strausser, Esq" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "C".

18. Plaintiff contends Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt by filing a complaint (the Foreclosure Complaint"), which thereafter Ocwen Loan Servicing, LLC wrongfully sworn that U.S. Bank, National Association et als. was in compliance with the "Fair Foreclosure Act" and for attempting to continue to collect a debt without identifying that Ocwen Loan Servicing, LLC was not a "residential mortgage lender" or "lender" as define by N.J.S.A. 2A:50-56(c) but yet sent defendant a Notice of Intention to Foreclosure dated January 28, 2016 that was not in compliance with the "Fair Foreclosure Act" to support U.S. Bank National Association summary judgment motion application which was granted by the Chancery Division court. See "a true copy of Mr. Albert Gruber, Certification Contact Management of Ocwen Loan Servicing paragraph (11)" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto exhibit "D".

19. Defendant's client Ocwen Loan Servicing, LLC did not make Plaintiff's mortgage, Defendant's client Ocwen Loan Servicing, LLC did not hold the Plaintiff's "residential mortgage at the time the NOI dated January 28, 2016 was sent to Plaintiff and nor was Defendant's client Ocwen Loan Servicing, LLC was assigned Plaintiff's residential mortgage. N.J.S.A.2A:50-56 at the time the notice was sent on January 28, 2016. Therefore, Defendant's client Ocwen Loan Servicing, LLC is not a "Lender" within the meaning of the Fair Foreclosure Act. Plaintiff claims Defendant's client has failed to notify the mortgagor Plaintiff of its status, as the "**lender**" is a deficiency, as matter of law. Therefore, Defendant allegations with the notice of intention to foreclose dated January 28, 2016 violated §1692e(2)(A) and 1692e(10) of the FDPA by making false, deceptive, and/or misleading representations in the Underlying Litigation signed by Mr. Strausser, Esq. when it was alleged that U.S. Bank National Association was in compliance with the FFA prior to the filing of the underlying litigation. See "a true copy of the complaint "Underlying Litigation by Mr. Justin M. Strausser, Esq" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "C".

20. On August 18, 2005, Plaintiff Leroy Spells, gave a mortgage note and at that time it was made payable to the order of EquiFirst Corporation See "a true copy of the Plaintiff's Residential mortgage promissory Note dated August 18, 2005" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "E".

21. On August 18, 2005, Plaintiff Leroy Spells gave a Residential mortgage to EquiFirst Corporation a Mortgage securing the Residential mortgage promissory Note. This document was recorded in the Official Records of Somerset County recorded on August 29, 2005. See "a true copy of the Plaintiff's Residential Mortgage dated August 18, 2005" filed as evidence in the Chancery Division Court under Docket# F-019475-16 attached hereto as exhibit "F".

22. Plaintiff contends Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 et seq., by attempting to collect a debt when Defendant's client Ocwen Loan Servicing, LLC had no legal right to accelerate the defendant's mortgage as a "Residential mortgage lender" or "Lender" within the meaning of "lender" as assignee of the mortgage N.J.S.A.2A:50-55 and has not complied with the FFA, see N.J.S.A. 2A:50-56(c)(11) Therefore, Plaintiff complains that Defendants' Underlying Litigation violated §1692e(2) and 1692(10) of the FDCPA by making false, deceptive, and/or misleading representation that U.S. Bank National Association was in compliance of N.J.S.A. 2A:50-56 prior to the filing of the foreclosure complaint.

23. Additionally, the U.S. Bank National Association et als. foreclosure case is active and is pending where U.S. Bank National Association et als. through Defendant has now threatening to obtain final judgment without complying with the pre-complaint notice prior to 30 days commencement of this foreclosure action and pursuant to N.J.S.A. 2A: 50-56. See "a true copy of the Notice of Intent to Request for Final Judgement as evidence in the Chancery Division Court under Docket# F-019475-16 dated December 29, 2017" attached hereto as exhibit "G".

24. Plaintiff contends, Defendant has proceeded for Final judgment on behalf of their client without demonstrating that U.S. Bank National Association et als. complied with the pre-complaint notice prior to 30 days commencement of this foreclosure action and pursuant to N.J.S.A. 2A: 50-56 demonstrates that Stern & Eisenberg, P.C. has maliciously continue to violated §1692e(2)(A) and 1692e(10) of the FDPA by making false, deceptive, and/or misleading representations in the Foreclosure action because Defendant has alleged on behalf of their client in its drafted foreclosure complaint demonstrates that Stern & Eisenberg, P.C. has maliciously continue to violated §1692e(2)(A) and 1692e(10) of the FDPA by making false, deceptive, and/or misleading representations in the Foreclosure action without demonstrating that U.S. Bank National Association et als. complied with the pre-complaint notice prior to 30 days commencement of this foreclosure action and pursuant to N.J.S.A. 2A: 50-56. See "a true copy of the Notice of Intent to Request for Final Judgement as evidence in the Chancery Division Court under Docket# F-019475-16 dated December 29, 2017" attached hereto as exhibit "G".

25. Defendant of behalf of their client has threatened to take a final judgment action that cannot legally be taken yet the December 29, 2016, notice has shown that Stern & Eisenberg, P.C. on behalf of their client has intended to be taken an action which is, in violation of § 1692e(5) of the FDCPA and in violation N.J.S.A. 2A:50-56 which has maliciously and has continues to misinform Plaintiff and the Chancery Division Superior Court.

26. Finally, Plaintiff contends Defendant's action constituted engaging in unfair or unconscionable means to collect or attempt to collect a debt, in violation of § 1692e(5) of the FDCPA.

## FIRST CAUSE OF ACTION –DECLARATORY RELIEF

27. Plaintiff repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

28. This foreclosure case is active and is pending and an actual controversy has risen and now exists between the Plaintiff and Defendant regarding rights and duties regarding the FFA which Plaintiff contends that Defendant do not have the right to foreclose the Subject Property.

29. Defendant's client's **January 28, 2016** Notice of Intention Foreclosure to
Plaintiff has violated the Fair Foreclosure Act see N.J.S.A. 2A:50-56(c)(11)
in violation of § 1692e(5) of the FDCPA as complained of herein and in
other ways as discovery will show.

30. Such violation(s) caused plaintiff damages.

## SECOND CAUSE OF ACTION –INJUNCITIVE RELIEF

31. Plaintiff repeats and re-alleges all previous paragraphs with the same force
and effect as if the same were set forth more fully at length herein.

32. Defendant is attempting to foreclose on the Subject Property.

33. Defendant's client U.S. Bank National Association et als. has no remedy at
law to enforce the right to exclusive possession of the Subject Property
where Ocwen Loan Servicing, LLC sent Plaintiff a **January 28, 2016** Notice
of Intention Foreclosure to Plaintiff that did not comply with the FFA and
did not fit within the meaning of "lender" as assignee of the mortgage
N.J.S.A.2A: 50-55 and did not complied with the FFA, see N.J.S.A. 2A: 50-
56(c)(11) which requires foreclosure plaintiff U.S. Bank National
Association et als. to independently identify itself with the name and address
of the "**actual lender**" on the notice of intent to foreclose.

34. To allow Defendant's client U.S. Bank National Association et als. to
proceed with this foreclosure action resulting in a Sheriff's sale of the
Plaintiff Subject Property would result in irreparable injury to Plaintiffs, who
would lose the Subject Property along with consideration time, money and
labor.

## THIRD CAUSE OF ACTION –NEGLIGENT

35. Plaintiff repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

36. As result of Defendant's negligent acts, plaintiff has suffered and continues to suffer emotional distress and other diminishments of plaintiff's quality life.

37. "The FDCPA is a consumer protection statue that prohibits certain abusive, deceptive, and unfair debt collection practices. By its terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while ensuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C.§ 1692. To that end, the FDCPA prohibits the use of any "false, deceptive, or misleading representations or means to connection with the collection of any debt." 15 U.S.C. § 1692, and creates a private right of action against debt collectors who failed to comply with its provisions.

38. Plaintiff is a "consumer" who has been harmed by Defendant Ocwen Loan Servicing, LLC, U.S. Bank National Association et als. and Stern & Eisenberg, P.C. acts or omission violating the FDCPA. Stern & Eisenberg, P.C. is "debt collector" in an attempt to collect a "debt" that arises out of a transaction entered into primarily for personal, family, or household purposes.

39. Stern & Eisenberg, P.C. foreclosure complaint dated **July 12, 2016**, Ocwen Loan Servicing, LLC **January 28, 2016** Notice of Intention to Foreclosure with the summary judgment certification dated **September 9, 2016** of Mr. Albert Gruber to support U.S. Bank National Association summary judgement application representation claim to Plaintiff is false, deceptive, and misleading to Plaintiff and the Superior Court under the FDCPA which is, in violation of § 1692e(5) of the FDCPA and in violation N.J.S.A. 2A:50-56.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendant as follows:

A. For postponement of the foreclosure of the Subject Property;

B. For a declaration that the foreclosure which was instituted be deemed and declared illegal and void, and that any further proceedings in connection be enjoined.

C. Plaintiff demands judgment against defendant in a sum in excess of $50,000. (FIFTY THOUSAND DOLLARS) in the first claim for relief, in a sum in excess of $50,000. (FIFTY THOUSAND DOLLARS) in the second claim for relief, in a sum in excess of $50,000. (FIFTY THOUSAND DOLLARS) in the third claim for relief, together with any all remedies available based on Defendant's violations of federal and state statutes and regulations;

D. For actual and consequential damages;

E. For cost of the suit herein incurred;

F. For Statutory, Compensatory and Punitive Damages as accorded by law;

G. For such other further relief as the court may deem just and proper.

Dated: _May    30_____, 2017

Respectfully Submitted,

_____

Leroy Spells, Plaintiff Pro Se
133 Oakland Avenue
Somerset, NJ 08873
Cherylspells1@gmail.com
(732) 912-0091 Telephone

**JURY TRIAL DEMANDED**

I affirm that the above signature is that of Leroy Spells, with who did personally appear before me.

Signature of Notary Public

CRYSTAL A. SINGLETON
NOTARY PUBLIC OF NEW JERSEY
I.D. No: 59401
My Commission Expires Aug. 27, 2017

_____

MY COMMISION EXPIRES

## **VERIFICATION**

I, the undersigned Plaintiffs, do solemnly swear; declare under penalty of perjury of the laws of New Jersey and the United States and State as follows:

To best of my personal knowledge and behalf, all the facts within this Complaint are true and correct.

FURTHER, THE AFFIANT
IN WITNESS WHEREOF, I hereunto set my hand and my seal, and hereby certify all the statements made above are true, correct and complete.

DATED May 30, 2017

Respectfully Submitted,

Leroy Spells, Plaintiff Pro Se
133 Oakland Avenue
Somerset, NJ 08873
Cherylspells1@gmail.com
(732) 912-0091 Telephone

I affirm that the above signature is that of Leroy Spells, with who did personally appear before me.

Signature of Notary Public

CRYSTAL A. SINGLETON
NOTARY PUBLIC OF NEW JERSEY
I.D. No: 59401
My Commission Expires Aug. 27, 2017

MY COMMISION EXPIRES

# EXHIBIT A

Steven K. Eisenberg ˣ*
Thomas E. Shea ˣ
Jacqueline F. McNally ˣ*ᴼ
David M. Lambropoulos ˣ*
Margaret Cascino *ᴼ
M. Troy Freedman ˣ
Evan Barenbaum ˣ*
Stacey A. Weisblatt *ᴼ
Salvatore Carollo ˣ*
Paul S. Huntington ˣ*ᴼ
Andrew J. Marley ˣ*
Michael J. Reilly *
Roland Georger ᴼ
Lucas M. Anderson ˣ*
William E. Miller ˣ*
John M. Kolesnik ˣ*
Justin M. Strausser ˣ*
Thomas F. Gallagher ˣ*
Edward J. McKee ˣ*
Todd N. Robinson ᴼ
Catherine L. Corey ᴼ
Christopher M. Camporeale *
Stefanie Malone-Zeitz ˣ*
Steven P. Kelly ˣ*
Jessica N. Manis ˣ*
Frank J. Keenan ˣ*



Stern & Eisenberg, PC
www.sterneisenberg.com

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

1040 N. Kings Highway
Suite 407
Cherry Hill, NJ 08034
(609) 397-9200
Facsimile: (856) 667-1456

485 B Route 1 South
Suite 330
Iselin, NJ 08830
(732) 582-6344
Facsimile: (732) 726-8719

4976 Transit Road #2
Depew, NY 14043
(732) 582-6344
Facsimile: (732) 726-8719

---

Richard F. Stern +ˣ

ˣ Admitted to practice in PA
* Admitted to practice in NJ
ᴼ Admitted to practice in NY
+ Of Counsel

**April 1, 2016**

Leroy Spells
133 Oakland Avenue
Somerset, NJ 08873

    Creditor ("Creditor"):    U.S. Bank National Association, as Trustee for Residential Asset
Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5
    Our File Number:    NJ-118435312-16
    Property (the "Property"): 133 Oakland Avenue, Somerset, NJ 08873

To Whom It May Concern:

**PLEASE BE ADVISED THAT THIS LAW FIRM IS A DEBT COLLECTOR WHO MAY BE ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE ENCLOSED LETTER/NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT A DEBT. IF YOU HAVE RECEIVED A DISCHARGE OF THIS DEBT IN BANKRUPTCY AND HAVE NOT REAFFIRMED THE DEBT, THEN THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, BUT SOLELY AS NOTICE OF THE ENFORCEMENT OF THE SECURITY INTEREST AGAINST THE PROPERTY.

Notice Required under the Fair Debt Collection Practices Act

1.     The amount of the debt alleged by the Creditor is $ 254,881.41. (The amount of delinquency may change due to additional payments, late charges, interest, changes in property value, and other authorized expenses; therefore, you must contact our office for updated figures.)

2.     The debt is owed to the Creditor identified above.

3.     Unless you dispute the validity of the debt or any portion thereof within 30 days of this letter, we will assume that the debt is valid. If you notify our office during the 30 day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment, if any, and a copy of such verification of the debt or a copy of a judgment, if any, will be mailed to you.

Upon your written request within the 30 day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

Stern & Eisenberg, PC

# EXHIBIT B

Ocwen
P.O. BOX 9066
TEMECULA, CA 92589-9066



9314 8100 1170 0851 3166 12

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Ocwen
P.O. Box 6440
Carol Stream, IL  60197-6440

**RETURN RECEIPT (ELECTRONIC)**

Send Correspondence to:
Ocwen
P.O. Box 24738
West Palm Beach, FL  33416-4738

20160128-209

Leroy Spells
Cheryl Spells
133 OAKLAND AVE
SOMERSET, NJ 08873-1950





EXHIBIT



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

01/28/2016

Sent Via Certified Mail
9314 8100 1170 0851 3166 12
Loan Number:

Leroy Spells
Cheryl Spells
133 OAKLAND AVE
SOMERSET, NJ 08873-1950

Property Address: 133 Oakland Avenue
Somerset, NJ 08873

Lender:        U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products,
               Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5
Lenders Address:   60 Livingston Ave EM-MN-WS3D
               St. Paul, MN 55107

## NOTICE OF INTENT TO FORECLOSE

Dear Customer(s),

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on your mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose.

The debt is owed to the above mentioned Lender and OCWEN, on the behalf of the Lender, is sending you this notice. The debt must be sent to OCWEN as the servicer of the Lender.

NMLS # 1852                                                                          DEMANDNJM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



Page 1 of 6



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. If you would like such verification, please send your request in writing to the Loan Resolution Consultant within thirty (30) days. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

As you are aware, Ocwen Loan Servicing is the servicer, while the aforementioned Lender holds the mortgage loan on the above property in the original amount of $273,750.00.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of 01/27/2016, you owe the following:

| | |
|---|---|
| Principal and Interest | $5,669.50 |
| Interest Arrearage | $0.00 |
| Escrow | $3,138.97 |
| Late Charges | $283.50 |
| Insufficient Funds Charges | $0.00 |
| Fees / Expenses | $26.50 |
| Suspense Balance (CREDIT) | $1,649.75 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| **TOTAL DUE** | **$7,468.72** |

You may cure your default by paying the aforesaid amount to Ocwen by Money Gram, Bank Check, Money Order, or Certified Funds so that it is received at the below address on or before 03/05/2016.

If your account is not brought current by 03/05/2016, then we may start mortgage foreclosure proceedings, which may cause you to lose your property.

If you have the desire to remedy this situation we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that may be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.

Even if a foreclosure is started, you may reinstate your account until a judgment in foreclosure is entered. However, if a foreclosure is started, in addition to curing all missed payments, late charges, and other necessary items, you will be required to pay for attorney's fees and costs in an amount not to exceed that amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned, and will not stop any foreclosure proceedings that have begun. PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL US TO VERIFY THE EXACT AMOUNT DUE.

At any time after default, you may transfer your property to another person and that person may have the right to cure the default, if your mortgage documents allow.

You should immediately seek the advice of an attorney of your own choosing. If you are unable to obtain an attorney, you may communicate with the New Jersey Bar Association or Lawyer Referral Service in the county in which the

NMLS # 1852                                                                                                    DEMANDNJM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* [tm]

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

property is located. If you are unable to afford an attorney, you may communicate with the Legal Services office in the county in which the property is located. These telephone numbers can be found in your local telephone directory.

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. We will only release information once your written authorization is obtained, as required by law.

There may be possible availability of financial assistance for curing a default from programs operated by the state or federal government or non-profit organizations. Enclosed with this letter is a list of governmental and non-profit entities identified by the Commissioner of Banking of the State of New Jersey, which may provide financial assistance or counseling to borrowers in foreclosure. In addition, you may wish to call the following numbers to ascertain whether you qualify for assistance:

| | | |
|---|---|---|
| **HUD Approved Housing Counseling:** | **(800) 569-4287** | www.HUD.gov |
| **Veterans Administration:** | **(800) 827-1000** | |
| **New Jersey Commissioner of Banking:** | **(800) 446-7467** | |

If you disagree with the assertion that a default has occurred or the correctness of the calculation of the amount required to cure the default, please contact us.

Anish A has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Ocwen Loan Servicing, LLC
Toll Free Phone: (800) 746-2936

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 24736
West Palm Beach, FL 33416-4736

## PAYMENT REMITTANCE INFORMATION
### (Always include Loan # 7439998642 with your payment)

**Money Gram**
Receive Code: 2355
City: Orlando
St: FL
Loan # **7439998642**

**Overnight Address**
Ocwen Loan Servicing, LLC
2012 Corporate Lane, Suite 108
Naperville, IL 60563-0726
Attention: Cashiering Department

**VIA Regular Mail**
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

Enclosure: NJ information
NMLS # 1852                                                                                          DEMANDNJM
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*





**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

**HELPING YOU STAY IN YOUR HOME.**


MAKING HOME AFFORDABLE

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

Dear Customer(s),

There is help available if you are having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification Program, part of the initiative announced by President Obama to help homeowners.

**As your mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable. You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your property. Now is the time to act. We are ready to help you.**

**Here's how it works:** We will first determine if you are eligible based on your situation. To conduct this evaluation, we need you to submit an Initial Package consisting of a Request for Mortgage Assistance form (including all necessary certifications), an IRS Form 4506T-EZ or Form 4506-T, and documentary evidence of all income. You may obtain the Request for Mortgage Assistance form and the IRS Form 4506T-EZ or Form 4506-T form at www.ocwencustomers.com.

If you are eligible, we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment.

At first, you will make new, affordable monthly payments on your mortgage loan during a trial period. If you make those payments successfully and fulfill all trial period conditions, we will permanently modify your mortgage loan.

The modification may involve some or all of the following changes to your mortgage loan: 1) Bringing your account current; 2) Reducing the interest rate on your loan; 3) Extending the term of the loan, and/or 4) Delaying your repayment of a portion of the mortgage principal until the end of the loan term.

**`STEP 1` GATHER THE INFO WE NEED TO HELP YOU**

To take advantage of this opportunity and the Home Affordable Modification Program, contact us as soon as possible. To help speed the process it will be helpful if you have the following information when you call:

- Loan number
- Monthly pre-tax income of each borrower
- Information about any financial hardship you are suffering

If you do not qualify for a loan modification under this program, or do not want to stay in your home or keep your rental property, we will work with you to explore other options available to help you keep your property or ease your transition to a new home, if applicable.

NMLS # 1852                                                                                    DEMANDNJM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

---

## STEP 2  COMPLETE AND SUBMIT YOUR COMPLETE APPLICATION

We want to make modifying your mortgage loan as easy as possible. However, you must take the first step by contacting us at (800) 746-2936; Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm, and Sunday 9:00 am to 9:00 pm ET. You may also write to us at the address at the bottom of this letter. Be sure to include the information listed above.

Sincerely,
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**IMPORTANT NOTICE**   We want to help you avoid foreclosure scams.

### FINANCIAL COUNSELING SERVICES

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

**HUD Approved Housing Counseling:**   1-800-569-4287   www.HUD.gov

**HOPE Hotline Number:**   1-888-995-4673

## Beware of Foreclosure Rescue Scams. Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD-approved housing counselor.
  - For a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

NMLS # 1852                                                                 DEMANDNJM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



Page 5 of 6



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

## NEW JERSEY AGENCY LISTING

Fair Foreclosure Act Notice of Intention to Foreclose - List of Entities Providing Assistance
The following is a list of governmental and non-profit entities that may provide financial assistance or counseling to borrowers in foreclosure.

| | | |
|---|---|---|
| American Credit Alliance, Inc.<br>26 S. Warren St.<br>Trenton, NJ 08608<br>609-393-5400 | Atlantic Human Resources, Inc.<br>1 S. New York Ave.<br>Atlantic City, NJ 08401<br>609-348-4131 | Consumer Credit Counseling Service of Central New Jersey<br>1931 Nottingham Way<br>Hamilton, NJ 08619<br>609-586-2574 |
| Consumer Credit Counseling Service of New Jersey<br>185 Ridgedale Ave.<br>Cedar Knolls, NJ 07927-1812<br>973-267-4324 | Fair Housing Council of Northern New Jersey<br>131 Main St.<br>Hackensack, NJ 07601<br>201-489-3552 | Garden State Consumer Credit Counseling, Inc.<br>225 Willowbrook Road<br>Freehold, NJ 07728<br>1-800-992-4557 |
| Jersey Counseling & Housing Development, Inc.<br>29 S. Blackhorse Pike<br>Blackwood, NJ 08012<br>856-227-3683 | Jersey Counseling & Housing Development, Inc.<br>1840 S. Broadway<br>Camden, NJ 08104<br>856-541-1000 | Mercer County Hispanic Association<br>200 E. State St., 2nd Floor<br>Trenton, NJ 08607<br>609-392-2446 |
| Middlesex County Economic Opportunities Corporation<br>1215 Livingston Ave.<br>North Brunswick, NJ 08902<br>732-790-3344 | Monmouth County Human Services<br>Housing Services Unit<br>P.O. Box 3000<br>Freehold, NJ 07728<br>732-431-7998 | NJ Citizen Action (main office/financial education<br>center)<br>744 Broad St., Suite 2080<br>Newark, NJ 07102<br>973-643-8800<br>1-800-HJ-OWNER (loan counseling)<br>1-888-TAXES-11 (free tax preparation assistance) |
| NJ Citizen Action (Central Jersey)<br>85 Raritan Ave., Suite 100<br>Highland Park, NJ 08904<br>732-246-4772 | NJ Citizen Action (South Jersey)<br>2 Riverside Drive, Suite 362<br>Camden, NJ 08103<br>856-966-3091 | Ocean Community Economic Action Now, Inc.<br>22 Hyers St.<br>Toms River, NJ 08753-0773<br>732-244-2351, ext.2 |
| Paterson Coalition for Housing, Inc.<br>262 Main St., 5th Floor<br>Paterson, NJ 07505<br>973-684-5998 | Paterson Task Force for Community Action, Inc.<br>155 Ellison St.<br>Paterson, NJ 07505<br>973-279-2333 | Puerto Rican Action Board Housing Coalition Unit<br>90 Jersey Ave.<br>New Brunswick, NJ 08903<br>732-249-9700 |
| Tri-County Community Action Agency, Inc.<br>110 Cohansey St.<br>Bridgeton, NJ 08302<br>856-451-6330 | Urban League for Bergen County<br>106 W. Palisade Ave.<br>Englewood, NJ 07631<br>201-568-4988 | Urban League for Essex County<br>508 Central Ave.<br>Newark, NJ 07101<br>973-624-9535 |
| Urban League of Union County<br>288 N. Broad St.<br>Elizabeth, NJ 07208<br>908-351-7200 | Homelessness Prevention Program<br>New Jersey Department of Community Affairs<br>(866)889-6270 | |

*Basic eligibility is limited to: (a) single family owner occupied dwellings with all those on the deed and mortgage occupying the house; (b) no more than one mortgage or lien encumbrance on the property; (c) no initiated or ongoing bankruptcy. Assistance will be in the form of a loan, and a lien will be placed on the property. The family must document the financial reason for nonpayment. At the time of the eligibility decision, the household must have and document income sufficient to support the household and repay the loan. There is a fee for the credit check and property search.

NMLS # 1852

DEMANDNJM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Case 1:17-cv-04409-NLH-KMW   Document 1   Filed 06/14/17   Page 24 of 79 PageID: 24
SWC-F-019475-16   11/02/2016 1:16:25 PM   Pg 3 of 57   Trans ID: CHC2016105560
RECEIVED   WEDNESDAY 7/13/2016 3:40:09 PM 19003002

**FILED Jul 13, 2016**

Appendix XII-B2

# FORECLOSURE
# CASE INFORMATION STATEMENT
## (FCIS)
Use for Initial Chancery Division — General Equity foreclosure pleadings (not motions) under Rule 4:5-1. Pleading will be rejected for filing, under Rule 1:5-6(c), if information is not furnished or if attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA ☐ MO |
| RECEIPT NO: |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |
| BATCH DATE: |

## SECTION A: TO BE COMPLETED BY ALL PARTIES

**CAPTION**
U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5 v. Leroy Spells, Cheryl Spells, et al

**CONTY OF VENUE**
Somerset County

**DOCKET NUMBER (When available)**
F -019475-16

**NAME(S) OF FILING PARTY(IES)(e.g., John Doe, Plaintiff)**
U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5

**DOCUMENT TYPE**
☒ COMPLAINT        ☐ ANSWER        ☐ OTHER

**ATTORNEY NAME (IF APPLICABLE)**
Justin M. Strausser
Attorney at Law

**FIRM NAME (If applicable)**
Stern & Eisenberg, PC

**MAILING ADDRESS**
1040 N. Kings Highway, Suite 407, Cherry Hill, NJ 08034

**DAYTIME TELEPHONE NUMBER**
(609) 397-9200

## SECTION B: TO BE COMPLETED BY PLAINTIFF TO INITIAL COMPLAINT

**FORECLOSURE CASE TYPE NUMBER**

☐ 088   IN PERSONAM TAX FORECLOSURE
☐ 089   IN REM TAX FORECLOSURE
☒ 0RF   RESIDENTIAL MORTGAGE FORECLOSURE
☐ 0CF   COMMERCIAL MORTGAGE FORECLOSURE
☐ 0CD   CONDOMINIUM OR HOMEOWNER'S ASSOCIATION LIEN FORECLOSURE
☐ 091   STRICT FORECLOSURE
☐ 0FP   OPTIONAL FORECLOSURE PROCEDURE (NO SALE)

**IS THIS A HIGH RISK MORTGAGE PURSUANT TO**
P.L.2009,c.84 AND P.L.2008,c.127   ☐ YES   ☒ NO

PURCHASE MONEY MORTGAGE   ☐ YES   ☒ NO

RELATED PENDING CASE   ☐ YES   ☒ NO
IF YES, LIST DOCKET NUMBERS:

**FULL PHYSICAL STREET ADDRESS OF PROPERTY:**

133 Oakland Avenue
Somerset, NJ

ZIP CODE: 08873 COUNTY: Somerset

**MUNICIPALITY CODE(*) 1808**

MUNICIPAL BLOCK: 269

(LOTS): 2

## ALL FILING PARTIES MUST SIGN AND PRINT NAMES(S) AND DATE THE FORM BELOW

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**ATTORNEY/SELF-REPRESENTED SIGNATURE**

**PRINT ATTORNEY/SELF REPRESENTED NAME**
Justin M. Strausser
Attorney at Law

**DATE**
7/10/16


EXHIBIT
H

# EXHIBIT C

Steven K. Eisenberg, Esquire (009221995)
Jacqueline F. McNally, Esquire (020402005)
David M. Lambropoulos, Esquire (040322006)
Salvatore Carollo, Esquire (007012001)
Michael J. Reilly, Esquire (042522012)
Lucas M. Anderson, Esquire (014342011)
Justin M. Strausser, Esquire (090692014)
John M. Kolesnik, Esquire (012412010)
Christopher M. Camporeale, Esquire (072082013)
Stefanie Malone-Zeitz, Esquire (107872014)
Frank J. Keenan, Esquire (022041994)
Stern & Eisenberg, PC
1040 N. Kings Highway, Suite 407
Cherry Hill, NJ 08034
Telephone: (609) 397-9200
Facsimile: (856) 667-1456
Attorneys for Plaintiff
Our File No. NJ-118435312-16-LIT

| U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5 | SUPERIOR COURT OF NEW JERSEY SOMERSET COUNTY CHANCERY DIVISION |
|---|---|
| Plaintiff, | DOCKET NO.: F-019475-16 |
| v. Leroy spells Cheryl spells, et. Al. | **CERTIFICATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant(s). | |

I, _____**Albert Gruber**_____, being of full age, hereby certify as follows:

1.  I am employed as a ____Contract Management Coordinator____ of Ocwen Loan Servicing, LLC, the Plaintiff's loan servicer, and I am authorized to make this certification on behalf of Ocwen Loan Servicing, LLC. Plaintiff has not revoked Ocwen Loan Servicing, LLC authority to service the within loan. I make this certification based on my personal knowledge of the facts contained herein. My personal knowledge is based on my review of the business records described below.

2.  In the regular performance of my job functions at Ocwen Loan Servicing, LLC, I am familiar

with the business records maintained by Ocwen Loan Servicing, LLC for the purpose of servicing mortgage loans, collecting payments and pursuing delinquencies (the "business records"). These business records include electronic data compilations and imaged documents pertaining to the loans serviced by Ocwen Loan Servicing, LLC. These imaged documents include, but are not limited to, the true copies of the loan documents referenced herein.

3. Based on my training and my general knowledge of the processes by which they are created and maintained, the business records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Ocwen Loan Servicing, LLC. It is the regular practice of Plaintiff's mortgage loan servicers to make and update these business records.

4. On August 18, 2005, borrower, Leroy Spells, executed and delivered a Note to EquiFirst Corporation in the Principal Amount of 273,750.00. (See Exhibit "A" attached hereto and incorporated herein.)

5. To secure payment of the Note, Leroy Spells and Cheryl Spells executed a Mortgage to Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation on the same date. Said Mortgage was recorded with the Clerk of Somerset County on August 29, 2005 in Book OR-5791, Page 1271. (See Exhibit "B" attached hereto and incorporated herein.)

6. Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation assigned said mortgage to U.S. Bank National Association, as Trustee by Assignment of Mortgage recorded with the Somerset County Clerk on January 20, 2010, in Book OR-6295, Page 2807. (See Exhibit "C" attached hereto and incorporated herein.)

7. Mortgage Electronic Registration Systems, Inc. solely as nominee for EquiFirst Corporation assigned said mortgage to U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc. Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5

by Corrective Assignment of Mortgage recorded with the Somerset County Clerk on May 31, 2016 in Book 6875, Page 3235. Said Corrective Assignment of Mortgage was recorded to correct the assignee on the Assignment recorded on January 20, 2010. (See Exhibit "D" attached hereto and incorporated herein.)

8.  On or about May 1, 2009, Leroy Spells and Cheryl Spells executed and delivered a loan modification agreement, which adjusted the unpaid principal balance, then due and owing to $282,131.50. Said Agreement was not recorded. (See Exhibit "E" attached hereto and incorporated herein.)

9.  On or about June 24, 2010, Leroy Spells and Cheryl Spells executed and delivered a loan modification agreement, which adjusted the unpaid principal balance, then due and owing to $218,627.90 with an additional deferred amount of $61,000.00. Said Agreement was not recorded. (See Exhibit "F" attached hereto and incorporated herein.)

10. Borrower failed to make the September 1, 2015 monthly mortgage payment and has not subsequently cured the default.

11. On January 28, 2016, a Notice of Intent to Foreclose was sent in accordance with The Fair Foreclosure Act.  (See Exhibit "G" attached hereto and incorporated herein.)

12. On July 13, 2016, Plaintiff instituted the within foreclosure action by filing a Complaint.  (See Exhibit "H" attached hereto and incorporated herein).

13. On August 8, 2016, Defendants filed a contesting answer.  (See Exhibit "I" attached and incorporated herein).

14. As of August 17, 2016, the total unpaid principal balance due and owing on the loan is $187,628.50. (See Exhibit "J" attached hereto and incorporated herein.)

15. The originally executed note is currently in the possession of Plaintiff's foreclosure counsel, Stern & Eisenberg, PC for use in conjunction with this litigation.

I hereby certify that the foregoing statements made by me are true. I am aware if any statement made by me is willfully false, I am subject to punishment.

Dated _____ 9-9-16 _____

_____ Alber Grul _____
**Albert Gruber**
Name

Contract Management
~~Coordinator~~

Title

# EXHIBIT D

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JOHN KOLESNIK, ESQUIRE (012412010)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
SALVATORE CAROLLO, ESQUIRE (007012001)
STEVEN P. KELLY, ESQUIRE (010032010)
JESSICA N. MANIS, ESQUIRE (114562014)
FRANK J. KEENAN, ESQUIRE (022041994)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
ATTORNEYS FOR PLAINTIFF
FILE NUMBER: NJ-118435312-16 SRA

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5<br>Plaintiff<br>v.<br>Leroy Spells;<br>Mrs. Spells, Unknown Spouse of Leroy Spells;<br>Cheryl Spells;<br>Mr. Spells, Unknown Spouse of Cheryl Spells;<br>Robertwood Johnson University;<br>Steven T. Deak, MD<br>Defendant(s) | **SUPERIOR COURT OF NEW JERSEY**<br>**SOMERSET COUNTY**<br>**CHANCERY DIVISION**<br><br>Docket No.:<br><br>CIVIL ACTION<br><br>COMPLAINT IN<br>MORTGAGE FORECLOSURE |

Plaintiff, U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5, (herein after referred to as "Plaintiff") with offices located at 60 Livingston Avenue EM-MN-WS3D, St. Paul, MN 55107 alleges:

## COUNT I

1.      On August 18, 2005, the borrowers, Leroy Spells executed and delivered to EquiFirst Corporation a note to secure payment of the sum of $273,750.00 together with interest at the initial rate of 6.4000% on unpaid principal balance together with such other amounts until paid, said amounts to be paid at the initial monthly payment of $1,460.00, beginning October 1, 2005 through September 1, 2035 (original maturity date), and payable pursuant to the terms of the note (and mortgage).

2.      To secure payment of the note, the mortgagors, Leroy Spells and Cheryl Spells executed and delivered a mortgage on property commonly known as 133 Oakland Avenue, Somerset, NJ 08873 to Mortgage Electronic Registration Systems, Inc., as nominee for EquiFirst Corporation, its successors and assigns on August 18, 2005 thereby creating a lien. Said mortgage was recorded with the Somerset County Clerk on August 29, 2005, in Book OR-5791, Page 1271.

3.      On or about May 1, 2009, Leroy Spells and Cheryl Spells executed and delivered a loan modification agreement, which adjusted the unpaid principal balance, then due and owing to $282,131.50. Said Agreement further modified the monthly payments of principal and interest to $1,461.26, with an interest rate of 4.1000%. Said Agreement was not recorded.

4.      On or about June 24, 2010, Leroy Spells and Cheryl Spells executed and delivered a loan modification agreement, which adjusted the unpaid principal balance, then due and owing to $218,627.90 with an additional deferred amount of $61,000.00. Said Agreement further modified the monthly payments of principal and interest to the following:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 3.25000% | July 1, 2010 | $ 1,060.83 | $ 551.83, adjusts annually after year 1 | $ 1,612.66, adjusts annually after year 1 | August 1, 2010 | July 1, 2015 |
| 4.00000% | July 1, 2015 | $ 1,133.90 | Adjusts Annually | Adjusts Annually | August 1, 2015 | September 1, 2035 |

Said Agreement was not recorded.

5.      The mortgage is not a purchase money mortgage.

6.      The mortgage was assigned as follows:

   a.) Mortgage Electronic Registration Systems, Inc., as nominee for EquiFirst Corporation, its successors and assigns, assigned said mortgage to U.S. Bank National Association, as Trustee, by assignment of mortgage. Said Assignment was recorded with the Somerset County Clerk on January 20, 2010, in Book OR-6295, Page 2807.

   b.) Mortgage Electronic Registration Systems, Inc.("MERS"), as nominee for EquiFirst

Corporation, its successors and assigns, assigned said mortgage to U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5, by corrective assignment of mortgage. The purpose of said corrective assignment is to correct the assignee on the assignment recorded on January 20, 2010. Said Corrective assignment was recorded with the Somerset County Clerk on May 31, 2016, in Book 6875, Page 3235.

7.      The mortgaged premises (the Property) are fully described in Exhibit "A" annexed hereto and made a part hereof.

8.      The aforesaid Mortgage, in part, contains an agreement that the whole principal sum and interest shall become due at the option of the Mortgagee upon at least thirty (30) days written notice of a default to the mortgagor and mortgagor's failure to cure said default within the time provided; after a default in the payment of any installment of principal or of interest evidenced by the Note of even date; after default in the payment of any tax, water charge, sewer rent or assessment; or after default in the maintenance of required hazard insurance on the improvements existing on the property

9.      Said note and mortgage contain an agreement that, should any default be made in the payment of any monthly installment on account of principal and interest, or any part thereof or any of the other payments to be made by the obligor(s) under the provisions of the mortgage securing the note on the day whereon the same is payable as provided in the note (it being agreed that a default in the payment of any installment under the note shall exist only if not made good prior to the due date of the next installment) or in the mortgage, then and from thenceforth, that is to say after the lapse or expiration of said prior, the entire principal sum remaining unpaid, with all the arrearages with interest thereon, and all other payments provided in the mortgage, shall at the option to the obligee, its successors and assigns, become due and payable immediately thereafter although the period may not have expired.

10.     Defendant(s) have failed to make payment of outstanding principal, interest, advances and costs on September 1, 2015 and have failed to cure the default.

11.     By letters dated January 28, 2016, Plaintiff notified Leroy Spells and Cheryl Spells, to pay principal and interest (and any other amount due) in accordance with the terms of the Note and Mortgage from the default date of September 1, 2015 to the date of the notice and that failure to make arrangements to bring the loan current would leave the Plaintiff no alternative but

to accelerate the loan.

12.     Said Note and Mortgage contain an agreement that if any of the installments of taxes, assessments, water rents, charges, imposition of liens, levied upon the premises should remain in default, the mortgagee may pay the same, and such amount paid shall be a lien on said property, added to the amount of the mortgage debt and secured by this mortgage.

13.     During the course of this action, the plaintiff may be obligated to make advances for the payment of taxes, insurance premiums and necessary expenses to preserve the security, and such sums advanced under the terms of the note, together with interest, are to be added to the amount due on the mortgage debt and secured by the plaintiff's mortgage.

14.     The Defendants listed herein are named as party defendants to this action for any right, title and interest they may have in or against the subject property for any reasons set forth below:

    a. **Robertwood Johnson University** is hereby joined as a party Defendant to this instant foreclosure action to divest any right, title or interest it may claim in, to or against the mortgaged property by virtue of the following judgment. Said interest is subordinate to Plaintiff's mortgage.

```
                           SUPERIOR COURT OF NEW JERSEY
JUDGMENT:      DJ-159374-2008        ACTION TYPE:        CONTRC-REG
CASE NUMBER:   DC 003220 07          VENUE:              SOMERSET
DOCKETED:      07/09/2008
                          JOHN
 CREDITOR(S):                                   AWARD:     $2,343.56
    ROBERTWOOD JOHNSON UNIVERSITY
       ATTORNEY:  CELENTANO STADTMAUER & WALENTO N
 DEBTOR(S):
    LEROY SPELLS
       192 OAKLAND AVENUE, SOMERSET, NJ 08873-0000
       ATTORNEY:  PRO SE
    CHERYL SPELLS
       192 OAKLAND AVENUE, SOMERSET, NJ 08873-0000
       ATTORNEY:  PRO SE
 NOTE: AMOUNT DOCKETED IN SUPERIOR COURT, ADDL $$ MAY APPLY.
                     *** End of Abstract ***
```

    b. **Steven T. Deak, MD** is hereby joined as a party Defendant to this instant foreclosure action to divest any right, title or interest it may claim in, to or against the mortgaged property by virtue of the following judgment. Said interest is subordinate to Plaintiff's mortgage.

```
                           SUPERIOR COURT OF NEW JERSEY
JUDGMENT:      DJ-330808-2011        ACTION TYPE:        CONTRC-REG
CASE NUMBER:   DC 007613 10          VENUE:              SOMERSET
DOCKETED:      12/27/2011
 CREDITOR(S):              JOHN                 AWARD:     $1,087.92
    STEVEN T DEAK MD
       ATTORNEY:  HILBERTH & MCALVANAH
 DEBTOR(S):
    CHERYL SPELLS
       192 OAKLAND AVENUE, SOMERSET, NJ 08873-0000
       ATTORNEY:  PRO SE
 NOTE: AMOUNT DOCKETED IN SUPERIOR COURT, ADDL $$ MAY APPLY.
                     *** End of Abstract ***
```

15.    Any interest or lien on the premises that the defendants have or claim to have in or upon aforesaid mortgaged premises or some part thereof is subject and subordinate to the lien of the Mortgage set forth previously above which Mortgage is held by the Plaintiff herein.

16.    The Plaintiff is the holder of the Note (and Mortgage) and is entitled to commence this action.

17.    Plaintiff hereby alleges and believes that the Property, 133 Oakland Avenue, Somerset, NJ 08873, is occupied.

18.    The Notice of Intention as required pursuant to the "Fair Foreclosure Act" was mailed in accordance with the Fair Foreclosure Act.

19.    Additionally, prior to the institution of the within action, Plaintiff obtained and reviewed a title search in accordance with the requirements of R. 4:64-1(a).


WHEREFORE, Plaintiff, demands judgment:

    a)    Fixing the amount due on the Mortgage referenced above;

    b)    Barring and foreclosing the Defendants of all equity of redemption into the aforesaid lands;

    c)    Directing that Plaintiff be paid the amount due to Plaintiff as provided in the Mortgage above, together with interest and costs;

    d)    Adjudging that the lands described in the Mortgage and Exhibit "A" be sold according to the law to satisfy the amount due Plaintiff on the Mortgage as more fully described above; and,

    e)    Appointing a receiver of the rents, issues and profits of the lands described above.

    f)    Together with any other relief that may be deemed appropriate by the Court, including but not limited to the right to possession of the Property.

## COUNT II

20.    Plaintiff hereby incorporates by reference allegations set forth in Count I above as though more fully set forth herein.

21.    By the terms of the Note and Mortgage, Plaintiff is entitled to possession of the Property and all appurtenances.

22.    The mortgagor(s) and obligor(s) named herein has or may claim to have certain rights in the Property, and by reason thereof, has or have deprived plaintiff of possession of the Property.

WHEREFORE, plaintiff demands judgment against the defendants, except those protected by N.J.S.A. 2A:18-61.1, et seq.:

  a) for possession of the Property in favor of Plaintiff or its assignee or designee, which right to possession shall be transferred to the successful purchaser at the foreclosure sale;

  b) for damages and mesne profits

  c) for costs.

STERN & EISENBERG, PC

BY:
STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JOHN KOLESNIK, ESQUIRE (012412010)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
SALVATORE CAROLLO, ESQUIRE (007012001)
STEVEN P. KELLY, ESQUIRE (010032010)
JESSICA N. MANIS, ESQUIRE (114562014)
FRANK J. KEENAN, ESQUIRE (022041994)
Attorneys for Plaintiff

DATED: 7/12/16

## CERTIFICATION

Pursuant to 4:64-1(a)(2) and (3), on July 1, 2016, I communicated with the following employee of the Plaintiff's Mortgage Loan Servicer, who informed me that he/she (a) personally reviewed the documents filed/being filed herein for factual accuracy; and (b) confirmed the accuracy of such documents. The name, title and responsibility of the employee with whom I communicated is:

> Name: **Peter Nocero**
>
> Title: **Contract Management Coordinator**
>
> Responsibilities: **review/provide foreclosure support**

The above individual stated that Ocwen Loan Servicing, LLC is the mortgage servicers for Plaintiff, and confirmed that Ocwen Loan Servicing, LLC is authorized to act on behalf of Plaintiff. Based on my communication as set forth above, as well as my own inspection of the loan information supplied and other diligent inquiry, I execute this certification to comply with the requirements of 4:64-1(a)(2) and (3) , 1:4-8(a) and 1:5-6(c)(1)(E). I understand that I have an ongoing obligation to amend this certification in the event any ongoing investigation or discovery by Plaintiff/Servicer for Plaintiff indicates any change in the information previously reviewed.



STERN & EISENBERG PC

BY:

☐ STEVEN K. EISENBERG, ESQUIRE (009221995)
☐ JACQUELINE F. MCNALLY, ESQUIRE (020402005)
☐ DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
☐ MICHAEL J. REILLY, ESQUIRE (042522012)
☐ LUCAS M. ANDERSON, ESQUIRE (014342011)
☐ JOHN KOLESNIK, ESQUIRE (012412010)
☒ JUSTIN M. STRAUSSER, ESQUIRE (090692014)
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
☐ STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
☐ SALVATORE CAROLLO, ESQUIRE (007012001)
☐ STEVEN P. KELLY, ESQUIRE (010032010)
☐ JESSICA N. MANIS, ESQUIRE (114562014)
☐ FRANK J. KEENAN, ESQUIRE (022041994)
   Attorneys for Plaintiff

DATED: 7/13/16

Exhibit A

Legal Desciption:

ALL THAT CERTAIN TRACT, LOT AND PARCEL OF LAND LYING AND BEING IN TOWNSHIP
OF FRANKLIN SOMERSET COUNTY AND STATE OF NEW JERSEY BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AND IRON PIN FOUND ON THE SOUTHEASTERLY RIGHT OF
WAY LINE OF OAKLAND AVENUE (50.00 FEET WIDE), SAID POINT BEING LOCATED 82.50
FEET NORTHEASTERLY FROM THE INTERSECTION OF THE AFORESAID
SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE WITH THE NORTHEASTERLY RIGHT
OF WAY LINE OF FRALEY DRIVE (50.00 FEET WIDE), IF SAME WERE EXTENDED TO
FORM AN INTERSECTION; THENCE RUNNING

(1) ALONG THE AFORESAID SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE, NORTH
48 DEGREES 14 MINUTES 25 SECONDS EAST; A DISTANCE OF 75.00 FEET TO A POINT
AND IRON PIN FOUND ; THENCE

(2) SOUTH 41 DEGREES 45 MINUTES 35 SECONDS EAST, A DISTANCE OF 100.00 FEET
TO A POINT; THENCE

(3) SOUTH 48 DEGREES 14 MINUTES 25 SECONDS WEST, A DISTANCE OF 75.00 FEET
TO A POINT; THENCE

(4) NORTH 41 DEGREES 45 MINUTES 35 SECONDS WEST, A DISTANCE OF 100.00 FEET
TO A POINT ON THE AFORESAID SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE,
SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

BEING KNOWN AND DESIGNATED AS LOT 2 IN BLOCK 597 AS SHOWN ON A CERTAIN
MAP ENTITLED "MAP OF CAROL MANOR, SECTIONS 1 & 2", FILED IN THE SOMERSET
COUNTY CLERK'S OFFICE April 4, 1956, AS MAP NO. 414.

THE ABOVE DESCRIPTION BEING DRAWN IN ACCORDANCE WITH A SURVEY
PREPARED BY CONTROL LAYOUTS, INC., DATED March 9, 1999.

Parcel/Tax I.D. #:  LOT 2 BLOCK 269

Commonly known as:  133 Oakland Avenue, Somerset, NJ  08073



## CERTIFICATION

Pursuant to Rule 4:64-1(a), it is hereby stated that the Plaintiff obtained and reviewed a copy of a title search of the public records for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure and a copy of the title search is hereby attached to this certification.

STERN & EISENBERG, PC



BY:

☐ STEVEN K. EISENBERG, ESQUIRE (009221995)
☐ JACQUELINE F. MCNALLY, ESQUIRE (020402005)
☐ DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
☐ MICHAEL J. REILLY, ESQUIRE (042522012)
☐ LUCAS M. ANDERSON, ESQUIRE (014342011)
☐ JOHN KOLESNIK, ESQUIRE (012412010)
☒ JUSTIN M. STRAUSSER, ESQUIRE (090692014)
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
☐ STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
☐ SALVATORE CAROLLO, ESQUIRE (007012001)
☐ STEVEN P. KELLY, ESQUIRE (010032010)
☐ JESSICA N. MANIS, ESQUIRE (114562014)
☐ FRANK J. KEENAN, ESQUIRE (022041994)
Attorneys for Plaintiff

DATED: 7/13/16

## CERTIFICATION

Pursuant to Rule 1:38-7(b), I hereby certify that confidential personal identifiers as defined in Rule 1:38-7(a) are redacted in this pleading submitted to the Court. All subsequent papers submitted to the Court will not contain confidential personal identifiers in accordance with the provisions of these Rules.

STERN & EISENBERG, PC



BY:

☐ STEVEN K. EISENBERG, ESQUIRE (009221995)
☐ JACQUELINE F. MCNALLY, ESQUIRE (020402005)
☐ DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
☐ MICHAEL J. REILLY, ESQUIRE (042522012)
☐ LUCAS M. ANDERSON, ESQUIRE (014342011)
☐ JOHN KOLESNIK, ESQUIRE (012412010)
☐ JUSTIN M. STRAUSSER, ESQUIRE (090692014)
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
☐ STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
☐ SALVATORE CAROLLO, ESQUIRE (007012001)
☐ STEVEN P. KELLY, ESQUIRE (010032010)
☐ JESSICA N. MANIS, ESQUIRE (114562014)
☐ FRANK J. KEENAN, ESQUIRE (022041994)

Attorneys for Plaintiff

DATED: 7/12/16

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby stated that the matter in controversy is not the subject
of any other action pending in any other Court or of a pending arbitration proceeding to the best
of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or
arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading
and the previous pleadings, if any, at the present time we know of no other parties that should be
joined in the within action.

STERN & EISENBERG, PC



BY:

STEVEN K. EISENBERG, ESQUIRE (009221995)
☐ JACQUELINE F. MCNALLY, ESQUIRE (020402005)
☐ DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
☐ MICHAEL J. REILLY, ESQUIRE (042522012)
☐ LUCAS M. ANDERSON, ESQUIRE (014342011)
☐ JOHN KOLESNIK, ESQUIRE (012412010)
☐ JUSTIN M. STRAUSSER, ESQUIRE (090692014)
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
☐ STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
☐ SALVATORE CAROLLO, ESQUIRE (007012001)
☐ STEVEN P. KELLY, ESQUIRE (010032010)
☐ JESSICA N. MANIS, ESQUIRE (114562014)
☐ FRANK J. KEENAN, ESQUIRE (022041994)
Attorneys for Plaintiff

DATED: 7/12/16

**FILED Jul 13, 2016**

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS. ESQUIRE (040322006)
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JOHN KOLESNIK, ESQUIRE (012412010)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
SALVATORE CAROLLO, ESQUIRE (007012001)
STEVEN P. KELLY, ESQUIRE (010032010)
JESSICA N. MANIS, ESQUIRE (114562014)
FRANK J. KEENAN, ESQUIRE (022041994)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
ATTORNEYS FOR PLAINTIFF
FILE NUMBER: NJ-118435312-16 SRA

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5<br>Plaintiff<br>v.<br>Leroy Spells;<br>Mrs. Spells, Unknown Spouse of Leroy Spells;<br>Cheryl Spells;<br>Mr. Spells, Unknown Spouse of Cheryl Spells;<br>Robertwood Johnson University;<br>Steven T. Deak, MD<br>Defendant(s) | **SUPERIOR COURT OF NEW JERSEY**<br>**SOMERSET COUNTY**<br>**CHANCERY DIVISION**<br><br>Docket No.:   **F -019475-16**<br><br>CIVIL ACTION<br><br>COMPLAINT IN<br>MORTGAGE FORECLOSURE |

NOTICE PURSUANT TO THE
FAIR DEBT COLLECTION PRACTICES ACT

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. THIS NOTICE
IS SENT TO YOU IN AN ATTEMPT TO COLLECT THE INDEBTEDNESS REFERRED TO
HEREIN AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT
PURPOSE.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS
NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION
THEREOF. THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS

OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE ENCLOSED LETTER/NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT A DEBT. IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY (AFTER ENTERING INTO THE RELEVANT MORTGAGE NOTE AND MORTGAGE (OR OTHER SECURED OBLIGATION) AND HAVE NOT REAFFIRMED THE DEBT) THEN THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, BUT SOLELY AS PART OF THE ENFORCEMENT OF THE MORTGAGE/LIEN AGAINST REAL PROPERTY (SECURED PROPERTY).

# EXHIBIT E

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

MIN I:

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND
MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.

| August 18, 2005 | Somerset | NJ |
|---|---|---|
| (Date) | (City) | (State) |

133 Oakland Avenue, Somerset, NJ 08873
(Property Address)

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 273,750.00 (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is EquiFirst Corporation . I will make all
payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this
Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest
at a yearly rate of   6.400 %. The interest rate I will pay may change in accordance with Section 4 of the Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on   October 1, 2005
I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before principal. If on   September 1, 2035   , I still owe amounts under
this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,460.00 .
This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest
rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.



EXHIBIT
A

J-8.

Multistate Adjustable Rate Note-Libor Index
FF815N (2/00)

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
   The interest rate I will pay may change on **September 1, 2008**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **4.500** percentage points ( **4.500 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than **9.400%** or less than **6.400 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.400%** or less than the initial interest rate provided for in Section 2 of this Note.

**(E) Effective Date of Change**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER RIGHT TO PREPAY
   I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial payment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

$\mathcal{J} \cdot \mathcal{S}.$

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

*J. S.*

EF815N
Loan Number: 900990                Page 3 of 4

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

"WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED"

_Leroy Spells_ 8/18 (Seal)
Leroy Spells                          -Borrower

                                      (Seal)
                                      -Borrower

                                      (Seal)
                                      -Borrower

                                      (Seal)
                                      -Borrower

                                      (Seal)
                                      -Borrower

                                      (Seal)
                                      -Borrower

FF815N

## ADJUSTABLE RATE NOTE ADDENDUM
### FOR THE INTEREST ONLY PAYMENT PERIOD

### THIS ADDENDUM TO THE ADJUSTABLE RATE NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.

This Adjustable Rate Note Addendum is made this 18th day of August , 2005, and is incorporated into and shall be deemed to amend the Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to EquiFirst Corporation (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date and covering the property described in the Security Instrument located at:

### 133 Oakland Avenue, Somerset, NJ 08873
(Property Address)

ADDITIONAL COVENANTS: Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

I.   Section 3 and 4 of the Note are modified to provide for sixty (60) monthly payments of interest only ("Interest Only Period") at the interest rate determined in accordance with Sections 2 and 4 of the Note. Sections 3 and 4 of the Note are modified as follows:

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay interest during the Interest Only Period, and principal and interest thereafter during the Amortization Period, by making a payment every month.

Interest Only Period: The "Interest Only Period" is the period from the date of the Note through 09/01/2010.

Amortization Period: The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date.

I will make my monthly payments on the 1st day of each month beginning on October 1, 2005.   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to scheduled interest and principal. If on September 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

#### (B) Amount of My Interest Only Payments
The first 36 monthly payments will be in the full amount of U.S. $ 1,460.00, which equals one twelfth (1/12th) of the amount of yearly interest due on the principal at the time the loan was made. These payments are called the "Interest Only Payments". No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional Payments of principal may be made in accordance with the provisions of this Note.

#### (C) Monthly Payment Changes
During the Interest Only Period, changes in my monthly payment will reflect changes in the interest rate that I must pay.   During the Amortization Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly  payment in accordance with Section 4 of this Note.

EF9691 (3/04)

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on **September 1, 2008**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **4.500** percentage points ( **4.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.
During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in substantially equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **9.400%** or less than **6.400** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.400%** or less than the initial interest rate provided for in Section 2 of this Note.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my Interest Rate and the amount of my monthly payment before the effective date of any changes. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.
II. All other provisions of the Security Instrument and any Rider are unchanged by this Rider to the Security Instrument for Interest Only Payments and remain in full force and effect.
**I understand that for the Interest Only Period I will not be reducing the principal balance. After Five (5) years if I only made my minimum payment, my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this Interest Only Payment Period Rider.

Leroy Spells    Apel8  8/18/05

Cheryl Spells

EF9702 (3/04) Loan Number 800880                    Page 2 of 2

## ADJUSTABLE INTEREST RATE FLOOR Addendum to Note

This ADJUSTABLE INTEREST RATE FLOOR ADDENDUM is made this 18th day of August, 2005, and amends the Note in the amount of U.S. $ 273,750.00 dated the same date and given by the person(s) who signs below (the "Borrower(s)") to EquiFirst Corporation (the "Lender").

In addition to the agreements and provisions made in the Note and the Security Instrument, and not withstanding any provisions to the contrary contained in said Note or the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

### ADJUSTABLE INTEREST RATE FLOOR

THIS LOAN HAS AN INTEREST RATE "FLOOR" WHICH WILL LIMIT THE AMOUNT THE INTEREST RATE CAN DECREASE. REGARDLESS OF ANY CHANGES IN THE INDEX, THE INTEREST RATE DURING THE TERM OF THIS LOAN WILL NEVER BE LESS THAN THE INITIAL INTEREST RATE PROVIDED FOR IN SECTION 2 OF THE NOTE.

*Leroy Spells* /8/18/05
Leroy Spells

800880

# Note Endorsements

Borrower(s): Leroy Spells
Property Address: 133 Oakland Avenue, Somerset, NJ 08873

Without Recourse, Pay to the Order of:

**RESIDENTIAL FUNDING CORPORATION**

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

**EquiFirst Corporation**

By: Steve Neu

$E_{y} C_{--} \cdot ...  ... ...$
Judy Faber, Vice President

Assistant Vice President

800880                                          Page 1 of 1
EF5nendr (7/03)

# EXHIBIT F

*21ρ 250 CK JB*

LSI
700 cherrington Pkwy
Coraopolis, PA 15108-9969

↑

Return To:
**EquiFirst Corporation**
**Attn: Collateral M**
**500 Forest Point Circle**
**Charlotte, NC 28273**

Prepared By:
*Janell Cameron*
**Janell Cameron**
**500 Forest Point Circle,**
**Charlotte, NC 28273**

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE
MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated **August 18, 2005**
together with all Riders to this document.
(B) "**Borrower**" is **Leroy Spells and Cheryl Spells, husband and wife**

Borrower is the mortgagor under this Security Instrument.
(C) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

800880
**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3031 1/01

 -6A(NJ) (0005)02

Page 1 of 16          Initials

VMP MORTGAGE FORMS - (800)52



 **EXHIBIT**
*B*


BRETT R. RADI COUNTY CLERK
SOMERSET COUNTY NJ
2000 5/9 28 11:19:37 AM
BK: 5791 PG: 1271-1292
INSTRUMENT # 2002053898

(D) "Lender" is **EquiFirst Corporation**

Lender is a **Corporation**
organized and existing under the laws of **North Carolina**
Lender's address is **500 Forest Point Circle, Charlotte, NC 28273**

(E) "Note" means the promissory note signed by Borrower and dated **August 18, 2005**
The Note states that Borrower owes Lender **two hundred seventy-three thousand seven hundred fifty and 00/100**                                          Dollars
(U.S. **$273,750.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2035**         .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider       [x] Other(s) [specify]
                                                             ARM Floor/ Interest Only
                                                             Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

800880

-6A(NJ) (0005) 02                        Page 2 of 16        Initials _J.S._ _C._        Form 3031 1/01

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the County of Somerset :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

See Attached Exhibit A

Property Account Number: 0900269000000002          which currently has the address of
133 Oakland Avenue                                                                    [Street]
Somerset          [City], New Jersey 08873          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

900880

-6A(NJ) (0005) 02          Page 3 of 15          Form 3031 1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

800880

-6A(NJ) (0005) 07                    Page 4 of 15                    Form 3031 1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

800880

-6A(NJ) (2005).02                    Page 6 of 16              Form 3031 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

800980

-6A(NJ) (0305).02                                   Page 7 of 16                           Initials: _____  C.D.

Form 3031 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

800880

-6A(NJ) (0005).01                Page 8 of 15                Form 3031 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

800880

-6A(NJ) (0005).02

Page 9 of 15

Initials: _____

Form 3031 1/01

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

800880

-6A(NJ) (0005).02                    Page 10 of 15                    Form 3031 1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

800880

Initials: $\mathcal{ISC}$

Form 3031 1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

900880

-6A(NJ) (0005).07                    Page 13 of 15                    Initials: _____   Form 3031 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

800880

-6A(NJ) (0005).02

Page 13 of 16

Form 3031 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____      _Leroy Spells_ 8/18-05 (Seal)
                             Leroy Spells            -Borrower

_____      _____(Seal)
                                                     -Borrower

_____(Seal)        _____(Seal)
               -Borrower                             -Borrower

_Cheryl Spells_ 9/15/05 (Seal)   _____(Seal)
Cheryl Spells    -Borrower                           -Borrower

_____(Seal)        _____(Seal)
               -Borrower                             -Borrower

800680

-6A(NJ) (0005).02              Page 14 of 16              Form 3031 1/01

Exhibit A

Legal Desciption:

ALL THAT CERTAIN TRACT, LOT AND PARCEL OF LAND LYING AND BEING IN TOWNSHIP
OF FRANKLIN SOMERSET COUNTY AND STATE OF NEW JERSEY BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AND IRON PIN FOUND ON THE SOUTHEASTERLY RIGHT OF
WAY LINE OF OAKLAND AVENUE (50.00 FEET WIDE), SAID POINT BEING LOCATED 82.50
FEET NORTHEASTERLY FROM THE INTERSECTION OF THE AFORESAID
SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE WITH THE NORTHEASTERLY RIGHT
OF WAY LINE OF FRALEY DRIVE (50.00 FEET WIDE), IF SAME WERE EXTENDED TO
FORM AN INTERSECTION; THENCE RUNNING

(1) ALONG THE AFORESAID SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE, NORTH
48 DEGREES 14 MINUTES 25 SECONDS EAST; A DISTANCE OF 75.00 FEET TO A POINT
AND IRON PIN FOUND ; THENCE

(2) SOUTH 41 DEGREES 45 MINUTES 35 SECONDS EAST, A DISTANCE OF 100.00 FEET
TO A POINT; THENCE

(3) SOUTH 48 DEGREES 14 MINUTES 25 SECONDS WEST, A DISTANCE OF 75.00 FEET
TO A POINT; THENCE

(4) NORTH 41 DEGREES 45 MINUTES 35 SECONDS WEST, A DISTANCE OF 100.00 FEET
TO A POINT ON THE AFORESAID SOUTHEASTERLY SIDELINE OF OAKLAND AVENUE,
SAID POINT BEING THE POINT AND PLACE OF BEGINNING.

BEING KNOWN AND DESIGNATED AS LOT 2 IN BLOCK 597 AS SHOWN ON A CERTAIN
MAP ENTITLED "MAP OF CAROL MANOR, SECTIONS 1 & 2", FILED IN THE SOMERSET
COUNTY CLERK'S OFFICE April 4, 1956, AS MAP NO. 414.

THE ABOVE DESCRIPTION BEING DRAWN IN ACCORDANCE WITH A SURVEY
PREPARED BY CONTROL LAYOUTS, INC., DATED March 9, 1999.

Parcel/Tax I.D. #: LOT 2 BLOCK 269

Commonly known as: 133 Oakland Avenue, Somerset, NJ 08873

## ADJUSTABLE RATE RIDER to Security Instrument

### (LIBOR 6 Month Index - As Published in *The Wall Street Journal* - Rate Caps)
(To Be Recorded Together with Security Instrument)

THIS ADJUSTABLE RATE RIDER is made this 18th day of August , 2005 and incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to EquiFirst Corporation (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

133 Oakland Avenue, Somerset, NJ 08873
(property address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE THE BORROWER MUST PAY.**

### ADDITIONAL COVENANTS.
In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 6.400 % . The Note provides for changes in the interest rate and the monthly payment as follows:

#### (A) Change Dates
The interest rate I will pay may change on September 1, 2008 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change

#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month is which the Change Date occurs is the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes
Before each Change Date, The Note Holder will calculate my new interest rate by adding 4.500 percentage points (4.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 9.400% or less than 6.400% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1.00%) the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.400 % or less than the initial interest rate provided for in Section 2 of this Note.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my new interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates to the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Leroy Spells_ 8/18/05
Leroy Spells

_Cheryl Spells_ 8/18/05
Cheryl Spells

800880
EF0612 (3/02)

Page 2 of 2

### INTEREST ONLY PAYMENT PERIOD RIDER
### ADJUSTABLE RATE MORTGAGE

THIS RIDER TO THE SECURITY INSTRUMENT PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.

THIS INTEREST ONLY RIDER is made this 18th day of August  2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to 'EquiFirst Corporation (the "Lender"), of the same date and covering the property described in the Security Instrument located at:

#### 133 Oakland  Avenue, Somerset, NJ 08873
(Property Address)

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.   Section 3 and 4 of the Note are modified to provide for sixty (60) monthly payments of interest only ("Interest Only Period") at the interest rate determined in accordance with Sections 2 and 4 of the Note.  Sections 3 and 4 of the Note are modified as follows:

**3. PAYMENTS**
    (A) Time and Place of Payments
       I will pay interest during the Interest Only Period, and principal and interest thereafter during the Amortization Period, by making a payment every month.

       Interest Only Period: The "Interest Only Period" is the period from the date of the Note through 09/01/2010.

       Amortization Period: The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date.

       I will make my monthly payments on the 1st day of each month beginning on October 1, 2005.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to scheduled interest and principal. If on September 1, 2035,  I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
       I will make my monthly payments at
EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

    (B) Amount of My Interest Only Payments
       The first 36 monthly payments will be in the full amount of U.S. $ 1,460.00, which equals one twelfth (1/12th) of the amount of yearly interest due on the principal at the time the loan was made. These payments are called the "Interest Only Payments".  No payments of principal are due during the Interest Only Period.  The Interest Only Payments will not reduce the principal amount of the Note. Additional Payments of principal may be made in accordance with the provisions of the Note.

    (C) Monthly Payment Changes
       During the Interest Only Period, changes in my monthly payment will reflect changes in the interest rate that I must pay.  During the Amortization Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly  payment in accordance with Section 4 of the Note.

EF9701 (3/05)
Loan Number 800880

Page 1 of 2

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on September 1, 2008, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 4.500 percentage points ( 4.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in substantially equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.460% or less than 6.400 % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.400% or less than the initial interest rate provided for in Section 2 of this Note.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Interest Rate and the amount of my monthly payment before the effective date of any changes. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

II. All other provisions of the Security Instrument and any Rider are unchanged by this Rider to the Security Instrument for Interest Only Payments and remain in full force and effect.

**I understand that for the Interest Only Period I will not be reducing the principal balance. After Five (5) years if I only made my minimum payment, my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this Interest Only Payment Period Rider.

_Leroy Spells_ _Sells / 8/18/05_

Leroy Spells

_Cheryl Spells_ _8/10/05_

Cheryl Spells

EF9702 (3/04) Loan Number 800880                    Page 2 of 2

## ADJUSTABLE INTEREST RATE FLOOR Rider to Security Instrument

(To Be Recorded Together with Security Instrument)

This ADJUSTABLE INTEREST RATE FLOOR RIDER is made this 18th day of August, 2005 and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who signs below (the "Borrower(s)") to     EquiFirst Corporation (the "Lender") to secure repayment of a Note in the amount of U.S $ 273,750.00 .

In addition to the agreements and provisions made in the Note and the Security Instrument, and notwithstanding any provisions to the contrary contained in said Note or the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

### ADJUSTABLE INTEREST RATE FLOOR

THIS LOAN HAS AN INTEREST RATE "FLOOR" WHICH WILL LIMIT THE AMOUNT THE INTEREST RATE CAN DECREASE. REGARDLESS OF ANY CHANGES IN THE INDEX, THE INTEREST RATE DURING THE TERM OF THIS LOAN WILL NEVER BE LESS THAN THE INITIAL INTEREST RATE PROVIDED FOR IN SECTION 2 OF THE NOTE.

Leroy Spells / 8/18/05
Leroy Spells

Cheryl Spells 8/18/05
Cheryl Spells

800880
EF059 (Rev 05/02)

STATE OF NEW JERSEY, _____Somerset_____ County ss:

On this_____18_____ day of **August, 2005**_____, before me, the subscriber,
personally appeared **Leroy Spells**

**Cheryl Spells**

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

Betty L. S. QD  8-18-0

Notary Public

**BETTY L. SMITH**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 9/22/2009**

800990
4A(NJ) (0005)02                    Page 18 of 18                    Form 3031 1/01

# EXHIBIT G

Case 1:17-cv-04409-NLH-KMW   Document 1   Filed 06/14/17   Page 76 of 79 PageID: 76

Steven K. Eisenberg ˣ*
Thomas E. Shea ˣ
Jacqueline F. McNally ˣ*ᵒ
David M. Lambropoulos ˣ*
Margaret Cascino *ᵒ
M. Troy Freedman ˣ
Evan Barenbaum ˣ*
Stacey A. Weisblatt *ᵒ
Salvatore Carollo ˣ*
Andrew J. Marley ˣ*
Michael J. Reilly *
Roland Georger ᵒ
Lucas M. Anderson ˣ*
William E. Miller ˣ*
John M. Kolesnik ˣ*
Justin M. Strausser ˣ*
Edward J. McKee ˣ*
Christopher M. Camporeale *
Stefanie Malone-Zeitz ˣ*
Steven P. Kelly ˣ*
Jessica N. Manis ˣ*
Frank J. Keenan ˣ*
Brandon P. Accardi ˣ*
Nicole Falcey ˣ*
Christopher Saliba *

Stern & Eisenberg, PC
www.sterneisenberg.com

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

1040 N. Kings Highway
Suite 407
Cherry Hill, NJ 08034
(609) 397-9200
Facsimile: (856) 667-1456

485 B Route 1 South
Suite 330
Iselin, NJ 08830
(732) 582-6344
(516) 630-0288
Facsimile: (732) 726-8719

4976 Transit Road #2
Depew, NY 14043
(516) 630-0288
Facsimile: (732) 726-8719

Richard F. Stern +ˣ

File No.:NJ-118435312-16

ˣ Admitted to practice in PA
* Admitted to practice in NJ
ᵒ Admitted to practice in NY
+ Of Counsel

December 29, 2016

VIA CERTIFIED AND FIRST CLASS MAIL

Leroy Spells
133 Oakland Avenue
Somerset, NJ 08873
70161370000162073174

Re: U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage
Asset-Backed Pass-Through Certificates, Series 2005-EFC5 v. Leroy Spells and Cheryl Spells, et al.

Docket No.: F- 019475-16

Property: 133 Oakland Avenue, Somerset, NJ 08873

**Notice of U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5's Intention to Apply for Final Judgment in Foreclosure**

**IMPORTANT: LEGAL NOTICE OF INTENT TO REQUEST FINAL JUDGEMENT IN FORECLOSURE. YOU SHOULD READ THIS NOTICE CAREFULLY. NOTICE IN ACCORDANCE WITH FAIR FORECLOSURE ACT (2A:50-58A(2))**

Dear Sir/Madam:

Please be advised that this firm represents U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5, the Plaintiff in the above referenced matter. If we do not receive a response to this notice from you in accordance with paragraph 2 of subsection 6a of the Fair Foreclosure Act, N.J.S.A. 2A:50-58a(2) (the "Fair Foreclosure Act"), within ten (10) days from the date of this notice, we will submit the appropriate proofs for the entry of a final judgment in foreclosure. We will submit our request on or after January 12, 2017.

Pursuant to paragraph 2 of subsection 6a of the Fair Foreclosure Act, you may, no later than ten (10) days after receipt of this within notice for entry of final judgment, mail to us a statement in which you, in good faith, certify as true that there is a reasonable likelihood that you will be able to provide the payment(s) necessary to cure the default within forty-five (45) days of the date that this notice became effective. The date of this notice became effective was the date we mailed it to you; the date set forth at the top of this letter. **The statement, if you choose to send one, must be in affidavit or certification form. The statement must be sent by registered or certified mail, return receipt requested to our address, as follows:**

U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5
c/o Stern & Eisenberg, PC
(response to 14/45 notice)
1040 N. Kings Highway, Suite 407
Cherry Hill, NJ 08034

Our phone number is (609) 397-9200 and our facsimile number is (856) 667-1456.

The Lender contact information, so you may contact a representative of the lender to obtain the amount required to cure the default is as follows:

**LENDER:** U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5
**LENDER'S ADDRESS:** EP-MN-WS4L West Side Flats, 60 Livingston Avenue, St. Paul, MN 55107
**LENDER'S MORTGAGE LOAN SERVICER:** Ocwen Loan Servicing, LLC
**SERVICER ADDRESS:** 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409
(800) 446 2936

If we receive such a timely statement from you, we cannot submit our request for entry of final judgment in foreclosure earlier than forty-five (45) days from the effective date of this notice or February 12, 2017.

Stern & Eisenberg, PC

BY: _____

☐ STEVEN K. EISENBERG, ESQUIRE
☐ JACQUELINE F. MCNALLY, ESQUIRE
☐ DAVID M. LAMBROPOULOS, ESQUIRE
☐ MICHAEL J. REILLY, ESQUIRE
☐ LUCAS M. ANDERSON, ESQUIRE
☐ JOHN KOLESNIK, ESQUIRE
☐ JUSTIN M. STRAUSSER, ESQUIRE
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE
☐ STEFANIE MALONE-ZEITZ, ESQUIRE
☐ SALVATORE CAROLLO, ESQUIRE
☐ STEVEN P. KELLY, ESQUIRE
☐ JESSICA N. MANIS, ESQUIRE
☐ FRANK J. KEENAN, ESQUIRE
☐ CHRISTOPHER A. SALIBA, ESQUIRE

CERTIFIED MAIL RETURN RECEIPT REQUESTED
Address correction requested

*Also sent first class mail, postage prepaid*
*Address correction requested*

**THIS IS AN ACTION TO ATTEMPT
TO COLLECT A DEBT. ANY INFORMATION
PROVIDED BY YOU MAY BE USED FOR THAT PURPOSE.**

## NOTICE PURSUANT TO THE
## FAIR DEBT COLLECTION PRACTICES ACT

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. THIS NOTICE IS SENT TO YOU IN AN ATTEMPT TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE ENCLOSED LETTER/NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT A DEBT. IF YOU HAVE RECEIVED A DISCHARGE IN BANKRUPTCY (AFTER ENTERING INTO THE RELEVANT MORTGAGE NOTE AND MORTGAGE (OR OTHER SECURED OBLIGATION) AND HAVE NOT REAFFIRMED THE DEBT) THEN THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, BUT SOLELY AS PART OF THE ENFORCEMENT OF THE MORTGAGE/LIEN AGAINST REAL PROPERTY (SECURED PROPERTY).